IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Commonwealth of Pennsylvania Department of Public Welfare, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Civil Action No. 09-811 ) ) |
| United States of America and United States Department of Health and Human Services, | ) ) ) ) |
| Defendants. | ) |

AMBROSE, District Judge

## OPINION
and
## ORDER OF COURT

The Commonwealth of Pennsylvania's Department of Public Welfare ("DPW") seeks judicial review of a final agency decision of the United States Secretary of Health and Human Services ("Secretary") to disallow approximately $15.1 million in federal Medicaid funding paid to DPW. Pending before the Court are Cross-Motions for Summary Judgment (Docket Nos. 13 and 18). The issue is whether the Secretary erred in denying DPW an evidentiary hearing. After a careful review of the parties' submissions and for the reasons discussed in this Opinion, Defendants' Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Unless otherwise indicated, the following facts are undisputed.

DPW brings this action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 704, for review of the final agency decision of the Departmental Appeals Board ("DAB" or the "Board") of the United States Department of Health and Human Services ("HHS") upholding the decision of

1

the Centers for Medicare and Medicaid Services ("CMS") to disallow $15,070,548 in federal financial participation ("FFP") claimed by the Commonwealth under the joint Federal-State Medicaid program.

The amount of federal funding the Commonwealth receives for its Medicaid expenditures is normally around 54%, but Congress has provided 90% enhanced funding for family planning services. At issue here is a claim by DPW for $114.4 million for the costs of family planning services that Managed Care Organizations ("MCOs") under contract to Pennsylvania's Medicaid program provided to Medicaid recipients for the period October 2000 through February 2004. During the relevant time period, Pennsylvania operated its mandatory Medicaid managed care program in twenty-five of its sixty-seven counties. The $114.4 million was calculated for family planning services provided through Pennsylvania's mandatory Medicaid managed care program, not for family planning services provided on either a fee-for-service or a voluntary managed care basis in the remaining forty-two counties.

DPW provided CMS with a letter and other documentation in April 2001 describing the claiming methodology that it planned to use for assessing family planning service expenditures in the managed care program. According to the letter, DPW would "develop a 'Family Planning Percentage or Factor' . . . to determine what proportion (presented as a simple percentage factor or Per Member Per Month amount) or amount of managed care premiums related to the provision of family planning services in order to claim 90 percent FFP for the identified portion of premiums." R. 4, 361. The family planning factor statistic – a ratio consisting of a numerator and denominator – was supposed to represent the ratio of family planning expenditures to total health care expenditures. The letter indicated that a "key factor" in developing the family planning factor "is assuring that the methodology represents family planning costs associated with populations eligible to enroll in managed care." Id. In a section of the submission entitled "Calculation of the Numerator: Identification of total family planning fee for services costs," DPW also told CMS that

2

"the Numerator was developed by summarizing total gross family planning service expenditures reported on the HCFA 64 for the period 7/1/95 - 6/30/96." Id. at 369. The HCFA-64 form contains statewide figures. The letter also requested a meeting with CMS staff "to provide documentation about this process or to answer questions about this methodology." Id. at 361. DPW met with CMS's Regional Office staff on May 18, 2001 and July 12, 2001. Using its family planning factor, DPW ultimately claimed a total of $114.4 million – $102.9 million of which was the federal share – for the period October 2000 through February 2004.

HHS Office of Inspector General ("OIG") conducted audit reviews of family planning service costs for several states, including Pennsylvania. In January 2006, the OIG issued an audit report pertaining to DPW's $114.4 million claim. Id. at 289-310. The OIG concluded that Pennsylvania had overstated that claim by $44.4 million. Among other things, the OIG found that DPW had used statewide data in the numerator of its calculation instead of data for only the mandatory managed care counties. According to the audit report, "[b]y claiming these costs at the enhanced family planning rate of 90 percent, rather than at the FMAP rate of about 54 percent, Pennsylvania received $15.1 million in unallowable Federal reimbursement." Id. at 298. Based on the OIG's audit, CMS issued a notice of disallowance to Pennsylvania in November 2006, disallowing $15,070,548 of FFP.

DPW appealed the disallowance decision to the DAB. DPW also requested an evidentiary hearing before the DAB to cross-examine certain CMS staff members who had submitted declarations stating that they had not understood that DPW intended to use statewide data in the numerator of its family planning calculation, and to elicit testimony from the OIG regarding the claim file they used to recalculate that numerator. On April 27, 2009, the DAB issued a nineteen-page decision, upholding the disallowance in full. The DAB also denied DPW's request for an evidentiary hearing. The DAB issued its decision based solely on the written submissions, but did not consider (and struck from the record) the declarations from the CMS staff members DPW sought to cross-

examine.

On June 23, 2009, DPW filed its Complaint in this Court seeking judicial review of the DAB's decision, including the DAB's denial of DPW's request for an evidentiary hearing. (Docket No. 1). Defendants filed an Answer on August 24, 2009. (Docket No. 2). On November 23, 2009, DPW filed a motion for summary judgment, concise statement of material facts, and supporting brief. (Docket Nos. 13-15). Defendants filed a cross motion for summary judgment, concise statement of material facts, supporting brief, and response to DPW's concise statement of material facts on February 1, 2010. (Docket Nos. 18-21). Each party opposes the other's motion. (Docket Nos. 24-27). The motions are now ripe for my review.

## II. LEGAL ANALYSIS

### A. Standard of Review

I have jurisdiction to review the Secretary's disallowance decision under the APA, 5 U.S.C. §§ 702 and 704, as well as under 28 U.S.C. § 1331.[1] See Massachusetts v. Bowen, 487 U.S. 879 (1988). CMS initially makes disallowance decisions on behalf of the Secretary as outlined by federal regulations. See 42 C.F.R. § 430.42. If a state disputes a disallowance decision, it may request reconsideration by the DAB. See 42 C.F.R. §§ 430.3, 430.42; see also 45 C.F.R. part 16 (setting forth reconsideration procedures). For disallowance cases in which a state files an appeal with the DAB, the DAB issues the final agency decision from which the state may seek judicial review. Courts typically review agency action under the APA on summary judgment motions because they do not engage in independent fact-finding. Rather, a reviewing court's only task "is to apply the appropriate APA standard of review to the agency decision based on the record the agency presents to the reviewing court." Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 743-44

---

[1] Congress amended the Medicaid Act in July 2008 to provide directly for judicial review of the Secretary's disallowance decisions, but the new provision did not become applicable until after DPW appealed to the DAB below and, therefore, does not apply to this case. See P.L. 110-275, Title II, § 204, July 15, 2008, 122 Stat. 2592-93 (adding subsection (e) to 42 U.S.C. § 1316).

4

(1985).

The APA requires a reviewing court to set aside an agency action if it is "arbitrary capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706. In making this inquiry, the reviewing court "must consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Virginia, Dep't of Med. Assistance Servs. v. Johnson, 609 F. Supp. 2d 1, 6 (D.D.C. 2009) (quoting Marsh v. Ore. Natural Res. Council, 490 U.S. 360, 378 (1989)). The "arbitrary and capricious" scope of review is narrow, and the court is not entitled to substitute its judgment for that of the agency. See id. (quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)); see also C.K. v. N.J. Dep't of Health & Human Servs., 92 F.3d 171, 181-82 (3d Cir. 1996).

### B. Evidentiary Hearing

The parties agree that the issue presently before me is whether the DAB erred in denying DPW's request for an evidentiary hearing. DPW's Resp. and Reply Br. (Docket No. 25) at 2. Specifically, DPW contends that the DAB should have conducted an evidentiary hearing to resolve disputed issues of material fact.[2] This argument is without merit.

As a threshold matter, DPW admits that administrative agencies have a great deal of flexibility in determining their fact finding procedures and that the APA does not require evidentiary

---

[2] DPW requested that the DAB grant an evidentiary hearing on two issues. First, DPW wanted to cross-examine CMS's declarants regarding their assertions that they did not understand that DPW meant to use state-wide data in the numerator of the family planning factor calculation. R. 12. Second, DPW sought a hearing to elicit testimony from OIG representatives regarding the data the OIG used to recompute the numerator. Id. at 16. The DAB addressed both issues in its written decision upholding the disallowance. With respect to the first issue, the DAB found that DPW had no right or need to a hearing to cross-examine the declarants because the DAB did not consider the CMS declarations in reaching its decision and had stricken those declarations from the record. Id. at 12. As to the second issue, the DAB noted, inter alia, that DPW did not identify any missing steps or other information necessary to understand the OIG's calculation, that DPW had supplied the claims database to the OIG, and that if DPW had questions about whether the database in fact included only family planning expenditures, DPW had the ability to check that itself. Id. at 16-19. Accordingly, the DAB concluded that DPW failed to show any basis for an evidentiary hearing or a remand. Id. at 19.

hearings. DPW's Br. Supp. (Docket No. 14) at 11 (citing Camp v. Pitts, 411 U.S. 138 (1973)). DPW argues, however, that DAB regulations requiring that the parties be given "ample opportunity" to develop the record entitle DPW to an evidentiary hearing in this case. Id. at 9 (quoting 45 C.F.R. § 16.4). As Defendants correctly note, however, DPW quotes this regulation out of context. It is clear from the full text of the regulation at issue that the "ample opportunity" language refers only to the <u>written</u> record and that the DAB actually <u>discourages</u> evidentiary hearings:

> The Board's basic process is review of a <u>written</u> <u>record</u> (which both parties are given <u>ample</u> <u>opportunity</u> to develop), consisting of relevant documents and statements submitted by both parties . . . . In addition, the Board may hold an informal conference . . . . The informal conference primarily involves questioning of the participants by a presiding Board member. Conferences may be conducted by telephone conference call. The written record also may be supplemented by a hearing involving an opportunity for examining evidence and witnesses, cross-examination, and oral argument (see § 16.11). <u>A hearing is more expensive and time-consuming than a determination on the written record alone or with an informal conference. Generally, therefore, the Board will schedule a hearing only if the Board determines that there are complex issues or material facts in dispute, or that the Board's review would otherwise be significantly enhanced by a hearing.</u> . . . In all cases, the Board has the flexibility to modify procedures to ensure fairness, to avoid delay, and to accommodate the peculiar needs of a given case. The Board makes maximum feasible use of preliminary informal steps to refine issues and to encourage resolution by the parties. . . .

45 C.F.R. § 16.4 (emphasis added).

DPW further argues that a second DAB regulation – 45 C.F.R. § 16.11 – requires the DAB to grant an evidentiary hearing whenever there are genuine issues of material fact in dispute. This argument likewise is without merit. Section 16.11 provides, in relevant part:

> [t]he Board will approve a request [for a hearing] . . . if it finds there are complex issues or material facts in dispute <u>the resolution of which would be significantly aided by a hearing</u>, or if the Board determines that its decisionmaking otherwise would be enhanced by oral presentations and arguments in an adversary, evidentiary hearing. . . .

45 C.F.R § 16.11 (emphasis added). Thus, even if there were disputed issues of material fact in this case, § 16.11 required the DAB to grant a hearing request <u>only if</u> it found that a hearing would have significantly aided the resolution of those issues. The DAB did not make such a finding in this

case, and I find nothing in the submissions before me indicating that the written record was inadequate or that a hearing would have "significantly aided" the resolution of any factual disputes. To the contrary, the written record here was more than ample. As Defendants note, the record on which the DAB based its decision consisted of more than 600 pages, including, inter alia, factual submissions and legal arguments advanced by both parties. The DAB also provided DPW with plenty of opportunity to submit written materials and permitted DPW to file supplemental briefs and/or to supplement the appeal file. Further, the DAB struck from the record and did not consider the declarations of the three CMS employees DPW sought to cross-examine.

DPW cites to the following portion of DAB's practice manual in a further attempt to convince me that the DAB must grant an evidentiary hearing if there is a disputed issue of material fact:

**When and why are evidentiary hearings held?**

An evidentiary hearing is appropriate where there are material facts in dispute and the record requires further factual development through testimony, or where the nature of the issues or complexity of the case otherwise warrants development in an adversarial hearing format.

DPW Br. Supp. at 11-12. This argument is likewise unpersuasive. In addition to the fact that the practice manual cannot override the regulations, the section DPW cites only reinforces the point that a hearing is appropriate where there are material facts in dispute and the record requires further factual development through testimony. It does not stand for the proposition that a hearing is required where, as here, the disputed issues may be resolved based on the written record. Cf. State of Pennsylvania v. Riley, 84 F.3d 125, 131 (3d Cir. 1996) (finding in case involving similar Department of Education regulations that even if there were disputed issues of material fact, an evidentiary hearing was not required where the written record was adequate).[3]

---

[3] Defendants cite Riley in support of their argument that an agency's decision regarding a party's request for an evidentiary hearing is purely discretionary and that the DAB did not abuse its discretion in this case. Defs.' Br. Supp. at 11-14. Although Riley involved U.S. Department of Education regulations, Defendants claim that those regulations are similar to the HHS regulations at issue in this case. In its reply brief, DPW agrees that under Riley, the APA requires an evidentiary hearing if there are material facts in dispute and the written record is inadequate to resolve them. DPW Reply Br. at 7. DPW argues,

7

For all of these reasons, I find that the DAB did not violate the APA or DAB regulations or otherwise err in denying DPW's evidentiary hearing request.

### C. The DAB's Decision on the Merits

As set forth above, the only question DPW addresses in its motion for summary judgment is whether the DAB erred in denying DPW's request for an evidentiary hearing. Although the Complaint avers that the disallowance decision was not in accordance with the law and that the DAB's findings of fact are not supported by substantial evidence (Complaint ¶ 17), DPW does not pursue these arguments in its summary judgment papers. Accordingly, Defendants argue that DPW has abandoned any challenge to the merits and that I should affirm the DAB's decision in its entirety. Alternatively, Defendants argue that they are nevertheless entitled to summary judgment on the merits because the disallowance decision was not arbitrary and capricious and was based on substantial evidence in the record. Defs.' Br. at 15-18.

In response, DPW denies that it has abandoned its challenge to the merits. Instead of arguing or pointing to record evidence attacking those merits, however, DPW asserts that "such a challenge is not yet ripe for judicial review because the record is incomplete." DPW's Reply Br. at 10. I disagree. As previously discussed, the record on which the DAB based its decision was more than adequate. In addition, I have found that the DPW was not entitled to an evidentiary hearing. Thus, DPW will have no occasion as it suggests to challenge the merits using an even further developed record. Because DPW has not meaningfully addressed the merits of the DAB's decision in its summary judgment papers and has effectively conceded that it cannot successfully challenge those merits on the record as it now stands, I find that the DAB's disallowance decision

---

however, that even if the Riley standard would excuse a hearing in this case, the DAB regulations – specifically 45 C.F.R. § 16.11(a) – require one. As set forth above, DPW's argument is without merit.

must be affirmed.[4]

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is denied and Defendants' Motion for Summary Judgment is granted. An appropriate Order follows.

---

[4] Because DPW has not developed its arguments on the merits and it bears the burden of showing that the DAB's decision was erroneous, I find it unnecessary to engage in a full discussion of the merits. I note, however, that Defendants have briefed these issues and their arguments appear sound.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Commonwealth of Pennsylvania<br>Department of Public Welfare,<br><br>    Plaintiff,<br><br>    vs.<br><br>United States of America and<br>United States Department of Health and<br>Human Services,<br><br>    Defendants. | Civil Action No. 09-811 |

AMBROSE, District Judge

## ORDER OF COURT

AND NOW, this 19th day of May, 2010, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that Defendants' Motion for Summary Judgment (Docket No. 18) is granted and that Plaintiff's Motion for Summary Judgment (Docket No. 13) is denied. The case is now closed.

                                                                       BY THE COURT:

                                                                       /s/ Donetta W. Ambrose
                                                                       Donetta W. Ambrose
                                                                       U.S. District Judge